## J. H. Alsdurf, Administrator, Appellee, v. Big Four Wilmington Coal Company, Appellant.

### Gen. No. 20,845.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. MARCUS A. KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed February 1, 1916.

### Statement of the Case.

Action by J. H. Alsdurf, administrator of the estate of Martin Carra, deceased, plaintiff, against the Big Four Wilmington Coal Company, defendant, in the Superior Court of Cook county, to recover for the death of plaintiff's intestate as a result of defendant's alleged violation of the Miners' Act (J. & A. ¶ 7475 *et seq.*). From a judgment for plaintiff for $4,000, defendant appeals.

The action was brought for the benefit of the next of kin of intestate. The deceased was killed by a large stone falling on him while engaged as a coal miner in defendant's mine, and while sounding the roof of his working place. The specific acts of wrongful violation of the statute, charged in the declaration, are, in part, failure to have its mine examiner—

(a) inspect the working places of deceased and others before they were permitted to enter the mine on that day,

(b) observe whether there were any dangerous roofs,

(c) place a conspicuous mark thereat, as notice for all men to keep out,

(d) observe that the roof and walls of the room in which decedent was working were in a dangerous condition.

Also that by reason thereof, decedent entered the place in the performance of his duties, and while so engaged was killed.

The mine is known as a long wall mine. A long wall mine is one where all the coal is taken out and the roof supported by the brushing or rock taken down. In such a mine, the mining commences in the center, the face or working edge of the layer or seam of coal forming a circle gradually increasing in circumference as the coal is taken out. There were two hundred rooms in the mine and two miners worked in each room. The room in question was only three feet in height, being the height of the vein or seam of coal. The coal was dug out to a width of four feet underneath the rock or brush not taken down at the end of the roadway, the face of the brush being four feet from the face of the coal.

All of the witnesses agreed that the only means of ascertaining the safety of the roof was by placing one's hand lightly against it, at the same time tapping it with a bar, pick or other implement. If the roof was loose or dangerous it would give a hollow or dead

Alsdurf v. Big Four Wilmington Coal Co., 198 Ill. App. 15.

sound and the hand could feel it quiver; while if the roof was sound, or apparently safe, it would give back a ringing or bell like sound, and the hand would feel no quivering or shaking, and in this way it can always be determined whether or not the roof is safe.

The only witness to the accident was Frank Aragno, a partner or "buddy" of intestate, who worked with him. Remigo Sambon, who worked in an adjoining room, and John McNamara, a track layer, were with intestate shortly before the accident. Aragno testified that he saw the mark "23," the date of the month, on the "brush" above the entrance to their room, before they entered it, indicating that the mine examiner had examined the room and that it was safe, but saw no similar mark on the walls of the room. The evidence of the mine manager was that the mark "23" was on the "brush" (at the end of the roadway) and about six or seven feet from where the rock fell. The witness and intestate upon entering the room, about 7:30 a. m., before commencing work, sounded the roof with their picks. In the opinion of the witness the room was in good condition up to the time the stone fell. About 9:00 a. m., intestate and Aragno, Sambon and the latter's "buddy" took lunch in the roadway near by. Aragno testified that upon returning to their room, intestate sounded the roof with his pick at the place where the rock subsequently fell, which was immediately to the right of the roadway, and about five minutes thereafter returned to the same point and while again sounding that part of the roof the stone fell upon him.

Sambon testified that he and intestate entered the latter's room "the first thing" that morning and found a "squeeze," namely, where a portion of the roof or coal had fallen between his room and that of appellee's intestate. Sambon testified:

"Q. Had you seen him go in there that morning to the place where the rock fell on him? A. * * * Yes, sir. But he (intestate) looked—it was pretty

bad. Then he came out and I saw the props   *   *   *
he got the props down under it (the stone)   *   *   *.
Well you see the props the first thing off in the morning,—he never sounded in the morning at all.''

He further testified that he saw intestate sound the roof with a pick that morning between nine and ten o'clock, and that the roof sounded good. Sambon testified, further, that the stone slipped, diagonally, about six inches towards the face of the coal before it fell. Aragno testified that the top of the stone was damp, smooth and slippery. The stone was seven feet long, three and one-half feet wide in the center, tapering to a point at the right side, and about one to two feet thick. One of defendant's expert witnesses, who examined the stone after it had fallen, testified that in such a mine a stone can change or break within a few minutes. He described a ''slip'' as a condition in the top of the stone which can be detected by sounding. Another expert witness, who testified in behalf of plaintiff, stated that if a stone is wet it can be ascertained by examination and the danger determined. Aragno testified in this regard: ''It is harder to tell if it (the stone) is solid when it is wet.''

The mine examiner, John Thom, testified that he examined the roof of the room at about three o'clock on the morning of the accident, testing the roof with a pick, and that there was no loose stone nor dangerous condition. The examiner to get into the room had to pass through a space under the rock or brush three feet in height and four feet in width. On the face of the rock or brush, at the end of the roadway and above the said entrance, he inscribed the mark ''23,'' and did not place any danger mark on the walls of the room. The testimony of Sambon tended to show that it was customary to place the mark ''on the face of the brush or some stone alongside.'' Thom testified that he also examined the room after the stone fell and that at the time he made the examination before the acci-

Alsdurf v. Big Four Wilmington Coal Co., 198 Ill. App. 15.

dent, "there was nothing could have come there * * * except they * * * (Carra and his 'buddy') had dug the coal out, that the *coal was* * * * *still covering the place where the stone fell,* and * * * that before Carra could have gone in there, he would have had to take the coal down." On cross-examination he was asked: "So you didn't sound it (the roof) at the place where he was killed * * *?" Answer: "It was too tight * * * I sounded it after I got through, *where I could get my pick to sound it, where the man was killed.*"

Sambon testified: "Carra did not take down any coal that morning." Aragno testified that intestate, after lunch, was working under the place where the stone fell and "we had taken the coal out, where Martin was standing, the day before."

Plaintiff's witnesses and the mine manager testified regarding falls of coal at that time in other rooms, some of which were not in use. Presence of such falls of coal were denied by the mine examiner.

D. R. ANDERSON and JOHN A. STAGG, for appellant.

CHARLES CHENEY HYDE, CHARLES B. ELDER, IRA E. WESTBROOK and CHARLES H. WATSON, for appellee.

MR. JUSTICE McGOORTY delivered the opinion of the court.

## Abstract of the Decision.

1. PLEADING, § 258*—*when amendment of name of plaintiff does not constitute stating new cause of action.* In an action by a plaintiff as "Administrator of the Estate of Carra Martin," an amendment changing all the papers in the case so as to read "Administrator of the Estate of Martin Carra" does not state a new cause of action, the words in which the transposition was made being *descriptio personae.*

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Alsdurf v. Big Four Wilmington Coal Co., 198 Ill. App. 15.

2.  PLEADING, § 474*—*when omission to change papers upon order of amendment cured after judgment.* In an action by a plaintiff as "Administrator of the Estate of Carra Martin" where the court ordered the amendment of all papers in the case so as to read "Administrator of the Estate of Martin Carra," it is immaterial after judgment that the *praecipe* and summons were not changed by interlineation subsequent to the amendment so as to conform thereto, the order of amendment being sufficient to support the verdict after judgment.

3.  APPEAL AND ERROR, § 1544*—*when giving of instruction to find defendant guilty if plaintiff made out case as alleged in declaration harmless error.* Although the practice in actions based on negligence of giving instructions to find defendant guilty if plaintiff made out his case by a preponderance of the evidence as alleged in the declaration is not to be commended, yet such instructions are not reversibly erroneous where every count in the declaration contains allegations of the facts necessary to a recovery.

4.  INSTRUCTIONS, § 159*—*when must be taken as a series.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as a result of defendant's alleged wilful violation of the act, an instruction in effect that plaintiff might recover for death of which a wilful violation of the act by defendant was the proximate cause, regardless of whether such violation was charged in the declaration, is not erroneous where other instructions given for plaintiff state fully that plaintiff can recover only for violations of the act as charged in the declaration, since in such case instructions must be taken as a series.

5.  MINES AND MINERALS, § 149*—*when not necessary for plaintiff to prove that intestate was directed to go to place where he was killed.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as a result of defendant's alleged wilful violation of the act, it is not necessary to prove that intestate was specifically directed to go to the place where he was killed, where defendant does not contend that at the time of his death intestate was not acting within the scope of his employment.

6.  MINES AND MINERALS, § 188*—*when instruction not erroneous as assuming roof of mine in dangerous condition.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as a result of defendant's alleged wilful violation of the act, an instruction that "if the jury believed from the evidence that the roof of the room where plaintiff's decedent was killed was in a dangerous condition, and that said dangerous condition could have been ascertained by the mine examiner within twelve hours preceding the day aforesaid, and that

the defendant was guilty of the wilful omission alleged," *held* not objectionable as assuming that the roof was in a dangerous condition.

7. MINES AND MINERALS, § 191*—*when instruction not erroneous as placing duty upon defendant to inspect mine continuously for certain period before accident.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as a result of defendant's alleged wilful violation of the act, an instruction that "if the jury believe  *  *  * said dangerous condition could have been ascertained by the mine examiner *within twelve hours preceding the day aforesaid,*" *held* not erroneous as telling the jury that it was the duty of defendant to inspect all places in the mine for twelve hours continuously preceding the beginning of the day in question, the instruction clearly presenting the issue as to whether there was a dangerous condition which could have been discovered at any time prior to the commencement of the working day of plaintiff's intestate.

8. INSTRUCTIONS, § 151*—*when requested instructions covered by given instructions properly refused.* Requested instructions which are fully covered by other instructions given on behalf of the same party, are properly refused.

9. MINES AND MINERALS, § 182*—*when question as to examination of roof of mine by mine examiner for jury.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as a result of the fall of a stone from the roof of the room where intestate was working when killed, the question whether the mine examiner examined such room as required by section 21 of such Act (J. & A. ¶ 7495) is a question for the jury.

10. MINES AND MINERALS, § 176*—*when evidence sufficient to establish that mine examiner could have ascertained dangerous condition of roof of mine.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as a result of the fall of a large stone from the roof of the room where intestate was working when killed, where the evidence was conflicting as to whether the mine examiner inspected the room as required by section 21 of the Act (J. & A. ¶ 7495), evidence *held* to establish the fact that the mine examiner in the exercise of reasonable care would have discovered such a dangerous condition, if it existed.

11. MINES AND MINERALS, § 86*—*when operator of mine not relieved from duty of inspecting roof.* The fact that a miner is required by section 23 of the Miners' Act (J. & A. ¶ 7497) to sound and thoroughly examine the roof of his working place before com-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

mencing work does not relieve the operator from the duty imposed by section 21 of the same Act (J. & A. ¶ 7495) to inspect such roof.

12. MINES AND MINERALS, § 127*—*when miner not guilty of contributory negligence in working under dangerous roof.* A miner has the right to rely on the performance of the duty imposed on the mine examiner by section 21 of the Miners' Act (J. & A. ¶ 7495), and, in the absence of evidence of a mark in such working place indicating the opinion of the examiner that the roof was dangerous, cannot be held guilty of contributory negligence in working under a stone which later falls and kills him.

13. MINES AND MINERALS, § 84*—*what constitutes a wilful violation within Mining Act.* A wilful violation within the meaning of the Miners' Act (J. & A. ¶ 7475 *et seq.*), means a conscious violation.

14. MINES AND MINERALS, § 127*—*when miner entitled to benefit of superior knowledge of mine examiners.* Under the Miners' Act (J. & A. ¶ 7475 *et seq.*), a miner is entitled to the benefit of the superior knowledge and experience of those charged with the duty of discovering dangerous conditions in the mine.

15. MINES AND MINERALS, § 176*—*when evidence sufficient to establish that mine examiner could have discovered condition of stone in roof of mine within specified time.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as a result of the fall of a large stone from the roof of the room where intestate was working in a long wall mine when killed, evidence *held* to show that the condition of the stone could have been discovered by examination at any time within twelve hours of its fall, although there was also evidence that in such a mine a stone can change or break within a few minutes.

16. MINES AND MINERALS, § 182*—*when question whether mine examiner could have discovered dangerous condition of roof for jury.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as a result of the fall of a large stone from the roof of the room where intestate was working when killed, the question whether the dangerous condition existed when the mine examiner inspected the room, and whether in the exercise of reasonable care such examiner should have discovered such condition, is for the determination of the jury on all the evidence.

17. MINES AND MINERALS, § 181*—*when question whether proximate cause of death of workman due to failure of mine examiner to use care to ascertain condition of roof for jury.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover

for the death of plaintiff's intestate as a result of the fall of a large stone from the roof of the room where intestate was working when killed, the question whether the proximate cause of intestate's death was the failure of the mine examiner to exercise reasonable care to discover such dangerous condition when he made his examination is for the determination of the jury on all the evidence.

18. MINES AND MINERALS, § 176*—*when evidence sufficient to sustain verdict for death of miner due to falling of stone from roof of mine.* In an action brought under the Miners' Act (J. & A. ¶ 7475 *et seq.*), to recover for the death of plaintiff's intestate as the result of the fall of a large stone from the roof of the room where intestate was working when killed, a verdict for plaintiff *held* not manifestly against the weight of the evidence.